1  **TIMOTHY R. GARRISON**
   California Bar No. 228105
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5008
   Tel: (619) 234-8467 ext. 3722 / Fax: (619) 687-2666
4  timothy_garrison@fd.org

5  Attorneys for JIMMY LOWELL ROBERTS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 08CR2433-LAB |
| | ) | |
| | ) | DATE: September 2, 2008 |
| | ) | TIME: 2:00 p.m. |
| | ) | |
| | ) | NOTICE OF MOTIONS AND MOTIONS |
| Plaintiff, | ) | TO: |
| | ) | 1) COMPEL DISCOVERY AND PRESERVE EVIDENCE; |
| | ) | 2) SUPPRESS STATEMENTS; |
| | ) | 3) SUPPRESS SUGGESTIVE OUT-OF-COURT IDENTIFICATIONS; AND |
| v. | ) | |
| | ) | 4) GRANT LEAVE TO FILE FURTHER MOTIONS |
| | ) | |
| JIMMY LOWELL ROBERTS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

TO:    KAREN P. HEWITT, UNITED STATES ATTORNEY; AND
       JOSEPH ORABONA, ASSISTANT UNITED STATES ATTORNEY:

**PLEASE TAKE NOTICE** that on September 2, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, the accused, JIMMY LOWELL ROBERTS, by and through his attorneys,

//

Timothy R. Garrison, and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the motions listed below.

## MOTIONS

JIMMY LOWELL ROBERTS, the accused in this case, by and through counsel, Timothy R. Garrison, and Federal Defenders of San Diego, Inc., pursuant to the Fourth, Fifth and Sixth Amendments to the United States Constitution, Federal Rules of Criminal Procedure and all other applicable statutes, case law and local rules, hereby moves this court for an order:

1) Compel Discovery and Preserve Evidence;
2) Suppress Statements;
3) Suppress Suggestive Out-of-Court Identifications; and
4) Grant Leave to File Further Motions

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at the time of the hearing on these motions.

Respectfully submitted,

Dated: August 20, 2008

 /s/ *Timothy R. Garrison*
**TIMOTHY R. GARRISON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Roberts
timothy_garrison@fd.org

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JIMMY LOWELL ROBERTS, )<br>)<br>Defendant. )<br>_____ ) | Case No.08cr2433-LAB<br><br>**CERTIFICATE OF SERVICE** |

Counsel for Defendant certifies that the foregoing pleading, is true and accurate to the best of his information and belief, and that a copy of the foregoing has been electronically served this day upon:

**Joseph J.M. Orabona**
joseph.orabona@usdoj.gov,glory.rascon@usdoj.gov,efile.dkt.gc1@usdoj.gov


mailed to:     Mr. Roberts
               Defendant


Dated: August 20, 2008                   */s/ Timothy R. Garrison*
                                         **TIMOTHY R. GARRISON**
                                         Federal Defenders of San Diego, Inc.
                                         225 Broadway, Suite 900
                                         San Diego, CA 92101-5030
                                         (619) 234-8467  (tel)
                                         (619) 687-2666  (fax)
                                         E-mail: Timothy_Garrison@fd.org

**TIMOTHY R. GARRISON**
California Bar No. 228105
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Tel: (619) 234-8467 ext. 3722 / Fax: (619) 687-2666
timothy_garrison@fd.org

Attorneys for JIMMY LOWELL ROBERTS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE LARRY A. BURNS)**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>  Plaintiff, <br><br> v. <br><br> **JIMMY LOWELL ROBERTS,** <br><br>  Defendant. | Case No. 08CR2433-LAB <br><br> DATE: September 2, 2008 <br> TIME: 2:00 p.m. <br><br> STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

**I.**

**STATEMENT OF FACTS**

The following statement of facts has been taken from information provided to the defense through discovery. Mr. Roberts does not adopt this statement as his own, and reserves the right to take a contrary position at motions or trial.

On June 26, 2008, a lone male walked into the Wells Fargo, located on 3505-B Sports Arena Boulevard, in San Diego, California, and approached a teller. The male suspect had a note which was allegedly presented to the teller. The teller (who has not been identified to defense counsel), says that the suspect had a revolver which she thought might have been a toy gun. The teller gave money to the suspect and the suspect subsequently left the bank. The suspect allegedly left the bank with $9,900.

Eugene Francis McKenna Jr. works at the convenience store near the bank. He allegedly printed out pictures of the bank surveillance photos and posted them in the convenience store. He apparently then began to investigate the case himself. Evidently, an individual called McKenna and told him the bank robber was

1  Jimmy Roberts. Mr. McKenna does not know Mr. Roberts. After finishing his investigation, Mr. McKenna
2  contacted the FBI with his results on June 28, 2008. The FBI was also investigating the case and received
3  identifications from various people that the man who robbed the bank was Jimmy Roberts. Some of these
4  identifications were accomplished by showing a lone photograph to the identifier. Some were accomplished
5  by the San Diego Police Department by using a "six pack."
6        On July 3, 2008, Mr. Roberts was arrested at a hotel in Cudahy, California. Mr. Roberts told the FBI
7  that he had used methamphetamine right before he was arrested. Mr. Roberts was subsequently transported
8  to the Maywood Police Department, allegedly read his Miranda rights, and questioned. Mr. Roberts made
9  incriminating statements. During the interview, Mr. Roberts was handcuffed. Additionally, Mr. Roberts told
10 the FBI agents that he had used methamphetamine before he was arrested and it was hard for him to think.
11 The FBI report notes that during the interview, Mr. Roberts, "said that two minutes before the FBI arrested
12 him he had snorted and swallowed a half an eight ball of speed (crystal methamphetamine)." *See Exhibit A.*
13       On October 1, 2003, the grand jury returned a two-count indictment, charging Mr. Roberts with two
14 violations of 18 U.S.C. § 2113(a) - Bank Robbery.

## II.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

17       Mr. Roberts moves for the production of all discovery listed below. This request is not limited to
18 those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody,
19 control, care, or knowledge of any "closely related investigative [or other] agencies." *See United States v.*
20 *Bryan,* 868 F.2d 1032 (9th Cir. 1989). If the government fails to produce said discovery prior to the motion
21 hearing, Mr. Roberts asks the government be precluded from using it <u>at all</u> in trial.
22       (1)    <u>The Defendant's Statements</u>. The government must disclose to the defendant <u>all</u> copies of
23 any written or recorded statements made by the defendant; the substance of any statements made by the
24 defendant which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal;
25 *see* Fed. R. Crim. P. 16, any response by the defendant to interrogation; the substance of any oral statements
26 which the government intends to introduce at trial and any written summaries of the defendant's oral
27 statements contained in the handwritten notes of the government agent; any response to any *Miranda* warnings
28 which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim.

P. 16(a)(1)(A)[1]. The Advisory Committee Notes and the 1991 Amendments to Rule 16 make clear that the Government must reveal <u>all</u> the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements. Federal Rule of Criminal Procedure 16 is designed "to protect the defendant's rights to a fair trial." *United States v. Rodriguez*, 799 F.2d 649 (11th Cir. 1986); *see also United States v. Noe*, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide statements offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious detriment to preparing trial and defending against criminal charges).

(2) <u>Arrest Reports and Notes</u>. The defendant also specifically requests that the government turn over all arrest reports, notes and TECS records not already produced that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts, referral slips, or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and *Brady v. Maryland*. The government must produce arrest reports, investigators' notes, memos from arresting officers, sworn statements, and prosecution reports pertaining to the defendant. *See* Fed. R. Crim. P. 16(a)(1)(B) and (C), 26.2 and 12(I); *United States v. Harris*, 543 F.2d 1247, 1253 (9th Cir. 1976) (original notes with suspect or witness must be preserved); *see also United States v. Anderson*, 813 F.2d 1450, 1458 (9th Cir. 1987) (reaffirming *Harris*' holding).

(3) <u>Brady Material</u>. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. *Kyles v. Whitley*, 514 U.S. 419 (1995). Under *Brady, Kyles* and their progeny, impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the accused. *See also United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976). This includes information obtained from other investigations which exculpates Mr. Roberts.

(4) <u>Any Information That May Result in a Lower Sentence Under The Guidelines</u>. The government must also produce this information under *Brady v. Maryland*. This request includes any cooperation or attempted cooperation by the defendant, as well as any information, including that obtained

---

[1] Of course, any of Mr. Roberts's statements, which are exculpatory, must be produced, as well. *See Brady v. Maryland*, 373 U.S. 83 (1963).

from other investigations or debriefings, that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) <u>The Defendant's Prior Record</u>. The defendant requests disclosure of her prior record. Fed. R. Crim. P. 16(a)(1)(B).

(6) <u>Any Proposed 404(b) Evidence</u>. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609. In addition, "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial and the purpose for which introduction is sought. This applies not only to evidence which the government may seek to introduce in its case-in-chief, but also to evidence which the government may use as rebuttal. *See United States v. Vega*, 188 F.3d 1150 (9th Cir. 1999). The defendant is entitled to "reasonable notice" so as to "reduce surprise," preclude "trial by ambush" and prevent the "possibility of prejudice." *Id.; United States v. Perez-Tosta*, 36 F.3d 1552, 1560-61 (11th Cir. 1994). If the Court chooses not to exclude such evidence because it was not produced or noticed prior to the instant motion hearing, Mr. Roberts requests such reasonable notice and discovery be produced at least two weeks before trial so as to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>. The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(E).

(8) <u>Request for Preservation of Evidence</u>. The defendant specifically requests the preservation of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, the defendant's personal effects, and any evidence seized from the defendant or any third party in relation to this case. Specifically, Mr. Roberts moves to preserve the following evidence: **the vehicle seized, the drugs seized including any packaging, any personal effects of the defendants; the cell phones seized, and the agents notes of the interrogation.**

(9) <u>Henthorn Material</u>. Mr. Roberts requests that the Assistant United States Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present case for impeachment material. *Kyles*, 514 U.S. at 419; *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *United States v. Lacy*, 896 F. Supp. 982 (N.D. Ca. 1995). At a minimum, the prosecutor has the obligation to inquire of his agents in order to ascertain whether or not evidence relevant to veracity or other impeachment exists.

(10) <u>Tangible Objects</u>. The defendant requests the opportunity to inspect and copy, as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). Specifically, to the extent they were not already produced, the defendant requests copies of all photographs in the government's possession, including, but not limited to, the defendant and any other photos taken in connection with this case.

(11) <u>Expert Witnesses</u>. The defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). The defense requests that notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions and credentials of the government's expert. Also pursuant to Fed. R. Crim. P. 16(a)(1)(G), the defense requests summaries of any expert witness the government intends to call, along with the identities of those witnesses and the specific materials relied upon by its experts in formulating the opinion. *United States v. Fort*, 472 F.3d 1106, 1121 (9th Cir. 2007)("materials on which a proposed expert witness relies [in developing his opinions] must be produced to Defendants in discovery). The defense also requests a hearing in advance of trial to determine the admissibility of qualifications of any expert. *See Kumho v. Carmichael Tire Co.* 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings . . ..").

(12) <u>Reports of Scientific Tests or Examinations</u>. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), the defense requests the reports of all tests and examinations conducted upon the evidence in this case that is within the possession, custody, or control of the government, the existence of which is known, or by the

exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of the defense or which are intended for use by the government as evidence in chief at the trial. Specifically, the defense requests the DEA-7.

(13) <u>Evidence of Bias or Motive to Lie</u>. The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony.

(14) <u>Impeachment Evidence</u>. The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. *See* Fed. R. Evid. 608, 609 and 613; *Brady v. Maryland*.

(15) <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(16) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(17) <u>Jencks Act Material</u>. The defendant requests production in advance of trial of all material, including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at the request of the defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963); *see also United States v. Boshell*, 952 F.2d 1101 (9th Cir. 1991) (holding that, where an agent goes over interview notes with subject, interview notes are subject to Jencks Act).

(18) <u>Giglio Information</u>. Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange

for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(19) <u>Agreements Between the Government and Witnesses</u>. In this case, the defendant requests identification of any cooperating witnesses who have committed crimes, but were not charged, so that they may testify for the government in this case. The defendant also requests discovery regarding any express or implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about, or advice concerning, any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

Pursuant to *United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D. Cal. 1999), the defense requests <u>all</u> statements made, either personally or through counsel, <u>at any time</u>, which relate to the witnesses' statements regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of these witnesses, any agreement sought, bargained for or requested, on the part of the witness at any time.

(20) <u>Informants and Cooperating Witnesses</u>. To the extent that there was any informant, or any other tip leading to a TECS hit in this case, the defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used, or to be used, in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Carrasco-Rivera. The government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense. *Roviaro v. United States*, 353 U.S. 53, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(21) <u>Bias by Informants or Cooperating Witnesses</u>. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. *Giglio v. United States*. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

1      (22)   <u>Residual Request</u>.  Mr. Roberts intends, by this discovery motion, to invoke her rights to
2  discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution
3  and laws of the United States.  Mr. Roberts requests that the government provide her attorney with the above-
4  requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

5  **III.**

6  **<u>MOTION TO SUPPRESS STATEMENTS</u>**

7      Mr. Roberts moves to suppress his statements on the grounds of an invalid *Miranda* waiver and
8  voluntariness.  According to the government, Mr. Roberts was made a post-arrest statement.

9  **A.**    **<u>The Government Must Demonstrate Compliance with *Miranda*.</u>**

10     In order for any statements made by Mr. Roberts to be admissible against him, the government must
11 demonstrate that they were obtained in compliance with the *Miranda* decision. The government must establish
12 that Mr. Roberts's waiver of his *Miranda* rights was voluntary, knowing, and intelligent.  *See Schneckloth v.*
13 *Bustamonte*, 412 U.S. 218 (1973).  When interrogation continues without the presence of an attorney, and a
14 statement results, the government has a heavy burden to demonstrate that the defendant has intelligently and
15 voluntarily waived his privilege against self-incrimination. *Miranda*, 384 U.S. at 475.  The court must indulge
16 every reasonable presumption against waiver of fundamental constitutional rights, so the burden on the
17 government is great.  *United States v. Heldt*, 745 F. 2d 1275, 1277 (9th Cir. 1984).
18     In determining whether a waiver is voluntary, knowing, and intelligent, the court looks to the totality
19 of the circumstances surrounding the case.  *Edwards v. Arizona*, 451 U.S. 477 (1981); *United States v.*
20 *Garibay*, 143 F.3d 534 (9th Cir. 1998).  The Ninth Circuit has held that determination of the validity of a
21 *Miranda* waiver requires a two prong analysis:  the waiver must be both (1) voluntary and (2) knowing and
22 intelligent.  *Derrick v. Peterson*, 924 F. 2d 813 (9th Cir. 1990).  The second prong requires an inquiry into
23 whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and
24 the consequences of the decision to abandon it."  *Id.* at 820-821 (quoting *Colorado v. Spring*, 479 U.S. 564,
25 573 (1987)).  Not only must the waiver be uncoerced, then, it must also involve a "requisite level of
26 comprehension" before a court may conclude that *Miranda* rights have been legitimately waived.  *Id.* (quoting
27 *Colorado v. Spring*, 479 U.S. at 573).  Unless and until *Miranda* warnings and a knowing and intelligent
28

1  waiver are demonstrated by the prosecution, no evidence obtained as a result of the interrogation can be used
2  against the defendant. *Miranda*, 384 U.S. at 479.

3       Here, Mr. Roberts was alone with two FBI agents. He was handcuffed and under the influence of
4  a deadly drug, crystal methamphetamine. It is up to the government to prove prove that Mr. Roberts waived
5  his rights intelligently and voluntarily. Mr. Roberts disputes any allegation any waiver was knowing,
6  intelligent, and voluntarily.

7  **B.**  **Mr. Roberts's Statements Must Be Voluntary.**

8       Even if this Court determines that Mr. Roberts validly waived his *Miranda* rights, it must still make
9  a determination that any statements are voluntary. Under 18 U.S.C. § 3501(a), this Court is required to
10 determine, whether any statements made by Mr. Roberts are voluntary. In addition, section 3501(b) requires
11 this Court to consider various enumerated factors, including whether Mr. Roberts understood the nature of
12 the charges against him and whether he understood his rights. Without such evidence, this Court cannot
13 adequately consider these statutorily mandated factors.

14      Moreover, section 3501(a) requires this Court to make a factual determination. Where a factual
15 determination is required, Fed. R. Crim. P. 12 obligates courts to make factual findings. *See United States*
16 *v. Prieto-Villa*, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important
17 as the trial itself,'" *id.* at 610 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)), these findings should be
18 supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's
19 responsive pleading.

20                                        **IV.**

21    **THE SUGGESTIVE OUT-OF-COURT IDENTIFICATIONS MUST BE SUPPRESSED**

22      A suggestive pre-trial identification may so taint subsequent out-of-court and in-court identifications
23 that an accused is denied due process of law if the witness is permitted to make the in-court identification.
24 *United States v. Love*, 746 F.2d 477, 478 (9th Cir. 1984). An unnecessarily suggestive pre-trial identification
25 procedure will cause identifications to be excluded at trial where the pre-trial procedure was so impermissibly
26 suggestive as to give rise to a substantial likelihood of irreparable misidentification. *Simmons v.*
27 *United States*, 390 U.S. 377 (1968). Once a procedure is established as impermissibly suggestive, the
28 reliability of the subsequent in-court identification of evidence must be analyzed by weighing the indicia of

1 reliability against the indicia of improper influence, that is "the corrupting tendencies of a suggestive pre-trial identification procedure." *United States v. Field*, 625 F.2d 862, 867 (9th Cir. 1980).

### A. An Evidentiary Hearing Is Necessary to Determine Whether the Agents' Actions and Use of Photographs Was Overly-Suggestive.

The Ninth Circuit has held that "[c]onvictions based on in-court identifications following a pre-trial identification by photograph will be set aside where the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *United States v. Barrett*, 703 F.2d 1076, 1084 (9th Cir. 1983).

In *Simmons v. United States, supra*, the Supreme Court extended the lineup decisions of the *United States v. Wade*, 388 U.S. 218 (1967), and *Gilbert v. California*, 388 U.S. 263 (1967) to cover the photographic lineup procedure. Photographic identifications must, therefore, meet the due process standards set forth in *Stovall v. Denno*, 388 U.S. 293 (1967).

A photographic display should not be arranged so that a particular individual's picture is in some way emphasized. Furthermore, the presentation of a photographic lineup must not be conducted so as to indicate or predispose the identifying party to pick out the accused. *Simmons v. United States, supra*, at 383. Since counsel was not present at the presentation of the photographic identification and the discovery reports do not indicate the exact manner in which those lineups were shown, an evidentiary hearing should be conducted to ensure that the lineups comported with due process standards.

As with other methods of out-of-court identification, reliability is the lynchpin in determining whether the photographic ID is admissible at trial. *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). The Supreme Court has set forth five (5) factors to consider in determining the <u>independent</u> reliability of identification testimony. *Neil v. Biggers*, 409 U.S. 188 (1972). The factors to be considered are: (1) the opportunity of the witness to view the individual at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at confrontation; and (5) the length of time between the crime and time of confrontation. *Biggers*, 409 U.S. at 199-200. Unless the identification satisfies these criteria, it must be suppressed. In addition, two (2) factors are typically added to the *Biggers* analysis, which focus on the indices of improper influence:

    1)      The presence of influence; and

1      2)    The conduct on the part of the government agents tending to focus the witness' attention on the defendant. *United States v. Field, supra*, at 866.

3 Therefore, Mr. Roberts requests the Court grant an evidentiary hearing to determine the admissibility of the out-of-court identifications.

### IV.

### **MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

Mr. Roberts and defense counsel have received limited discovery in this case. As new information surfaces due to the government providing discovery in response to these motions, or an order of this Court, defense may find it necessary to file further motions, or to supplement existing motions with additional facts. The denial of this motion will result in a violation, at a minimum, of Mr. Roberts's Fifth and Sixth Amendment rights. Also, it appears the government obtained the content of communications by use of a pen register order. Defense counsel has not had enough time to fully research and brief suppression of these communications. Therefore, defense counsel requests the opportunity to file further motions.

                                        Respectfully submitted,

DATED:     August 19, 2008             */s/ Timothy R. Garrison*
                                                TIMOTHY R. GARRISON
                                                Federal Defenders of San Diego, Inc.
                                                Attorneys for Mr. Roberts
                                                timothy_garrison@fd.org

```
 1  TIMOTHY R. GARRISON
    California State Bar No. 228105
 2  FEDERAL DEFENDERS OF SAN DIEGO, INC.
    225 Broadway, Suite 900
 3  San Diego, California 92101-5030
    Telephone: (619) 234-8467, Ext. 3720
 4  Facsimile: (619) 687-2666
    timothy_garrison@fd.org
 5
 6  Attorneys for Mr. JIMMY LOWELL ROBERTS
 7
```

 8                    UNITED STATES DISTRICT COURT

 9                   SOUTHERN DISTRICT OF CALIFORNIA

10                     (HONORABLE LARRY A. BURNS)

| 11 | UNITED STATES OF AMERICA, | ) | CASE NO. 08CR2433-LAB |
|---|---|---|---|
| 12 | Plaintiff, | ) | |
| 13 | v. | ) | DECLARATION OF TIMOTHY GARRISON IN SUPPORT OF DEFENDANT'S MOTIONS |
| 14 | JIMMY LOWELL ROBERTS, | ) | |
| 15 | Defendant. | ) | |
| 16 | | ) | |

17  I, TIMOTHY R. GARRISON, state the following, under penalty of perjury:

18  1.   I am an attorney with Federal Defenders of San Diego, Inc. I represent the defendant in

19       this case and have personal knowledge of all matters contained herein unless otherwise

20       stated.

21  2.   I have reviewed the produced discovery in this case.

22  3.   The discovery includes an audio recording of Mr. Roberts's interrogation by the FBI. On

23       the recording, it is clear from statements made by the FBI agent that Mr. Roberts is

24       handcuffed during the interview.

25  4.   On the recording, Mr. Roberts tells the agents that he used methamphetamine about two

26       minutes before the FBI "hit the door."

27  5.   On the recording, Mr. Roberts tells the agents, "It's hard for me to think right now."

28  6.   The discovery contains reports by the FBI and the SDPD.

7. From the discovery, it appears that the FBI used a single photograph (not a six-pack) to obtain identifications.

8. From the discovery, it appears that the SDPD obtained identifications by using a six-pack photograph line-up, but the names of the identifiers are redacted. Further, there is no discovery provided as to how the SDPD conducts photograph lineups.

I swear that to the best of my knowledge and memory, the foregoing is true and correct this 20th day of August, 2008.

**TIMOTHY R. GARRISON**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Navarro
Timothy_Garrison@fd.org